Filed 1/16/26  In re El.J. CA4/3

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION THREE

| | |
|---|---|
| In re El.J. et al., Persons Coming Under the Juvenile Court Law. | |
| ORANGE COUNTY SOCIAL SERVICES AGENCY, Plaintiff and Respondent, v. F.J., Defendant and Appellant. | G065679 (Super. Ct. Nos. 25DP0485, 25DP0486, and 24DP0487) O P I N I O N |

Appeal from orders of the Superior Court of Orange County, Michael Mooney, Judge. Affirmed.

Jack A. Love, under appointment by the Court of Appeal, for Defendant and Appellant.

Leon J. Page, County Counsel, Debbie Torrez and Deborah B. Morse, Deputy County Counsel, for Plaintiff and Respondent.

No appearance for the Minors.

\*          \*          \*

F.J. (Father) appeals from the juvenile court's jurisdiction and disposition orders regarding his three children with Y.P. (Mother): El.J., Em.J., and B.J. The court found the children came within its jurisdiction under Welfare and Institutions Code section 300, subdivision (b)(1) and removed them.[1] On appeal, Father challenges the sufficiency of the evidence. We conclude the court's findings were supported by substantial evidence and affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

In April 2025, the Orange County Social Services Agency (SSA) filed a petition, asserting the children—El.J. (then seven years old), Em.J. (then three years old), and B.J. (then two years old)—came within the jurisdiction of the juvenile court under section 300, subdivision (b)(1).[2] Among other things, the petition alleged Father and Mother have an ongoing history of domestic violence and Father has unresolved substance abuse and mental

---

[1] All undesignated statutory references are to the Welfare and Institutions Code.

[2] The petition also alleged jurisdiction under section 300, subdivision (g), but that ground was subsequently dismissed.

health issues. The matter proceeded to a jurisdiction and disposition hearing in June 2025.

## I.

### SSA'S REPORTS

At the hearing, the juvenile court admitted SSA's reports into evidence.[3] The reports explained the family had come to SSA's attention after an incident on February 21, 2025, when Mother was staying in a domestic violence shelter and Father was living with the children at their apartment. A detective from the Orange County Sheriff's Department went to the apartment building to serve a temporary restraining order on Father, and he reported Father began to freak out, rambled about Mother being human trafficked, and was not making sense.[4] Father was hospitalized under section 5150.

The children moved into the domestic violence shelter with Mother that same day and continued to reside with her there into April. Mother was in contact with Father, and she eventually was discharged from the domestic violence shelter after shelter workers saw Father near the shelter and became concerned Mother had disclosed its location. In a text message to a social worker on April 18, 2025, Mother indicated the children

---

[3] The juvenile court admitted the jurisdiction/disposition report dated May 14, 2025 (which attached and incorporated the detention report and addendum report #1), the addendum report #2 dated June 2, 2025, and the addendum report #3 dated June 10, 2025.

[4] SSA reported Mother had requested the temporary restraining order on February 20, 2025, but SSA later learned Mother's case was dismissed on April 9, 2025, because she did not appear on time at a hearing. SSA noted Mother also had received a temporary restraining order on April 17, 2025.

were with Father and she might have no choice but to return to Father given her housing situation. SSA sought and obtained a protective custody warrant for the children that day, and the children were located several days later with Father and Mother in Utah.

In its reports, SSA recounted multiple interviews with, among other individuals, Mother, Father, and El.J. Mother told SSA that, before moving into the domestic violence shelter, she had been living with Father, to whom she has been married since 2018. Mother "acknowledged past and present domestic violence in the home by" Father, and stated Father is emotionally abusive to her, yells and screams at her, and sometimes live streams their arguments on social media. Mother recounted a specific instance on February 3, 2025, when Father live streamed himself pushing Mother out of the door to the apartment while the children watched. Mother denied being the victim of human trafficking and said Father was mentally unstable and says things that are not real. Mother said she was afraid of Father because he "once punched her in the face, pushed her out the door and grabbed her out of a car." Mother said he "has been emotionally abusive for maybe a year to six months." Mother reported Father uses marijuana daily— sometimes when the children are present—and he is more relaxed and she is not afraid of him when he smokes marijuana.

Father told SSA *he* was the victim of domestic violence, not Mother. He insisted the petition's allegation of an ongoing history of domestic violence was untrue and there was "'[a]bsolutely no domestic violence.'" Father acknowledged he smoked about a gram of marijuana a day— sometimes in front of the children—but said he told the children he smokes a flower that is poison. Father said he started smoking marijuana as a teenager and has attended about 30 rehabilitation programs since then;

although he quit smoking marijuana when El.J. turned two years old, he resumed smoking again last year. Father claimed Mother "is being human trafficked by OC Care and the OC government," said Mother was physically and verbally abusive to him, and said he had "called the local police, FBI, ICE and the US Army."

In one of his interviews with SSA, Father said he was diagnosed with "paranoia schizophrenia disorder" when he was hospitalized. Although he stated he was treated then with antipsychotic medications, he is not currently taking psychotropic medication. In a different interview, Father said ADHD is his only mental health diagnosis. He denied being paranoid and said he had brain damage from previous injuries.

El.J. told SSA that Mother and Father fight with their words and yell at each other, and she once saw Father pull Mother out of the door. El.J. stated Father did not use physical discipline against her and she feels safe with both Mother and Father. But she feels small and afraid when she sees her parents argue. El.J. said Father smokes tobacco and a flower, but he does not act differently and she is not afraid of him when he smokes.

The social worker reported both Em.J. and B.J. appeared happy and healthy and also reported the children were eager for their visits with their parents and want to be reunified with them.

II.

TESTIMONY AT THE HEARING

El.J. and Em.J. testified they want to return to Mother and Father. El.J. also testified she never felt unsafe with Father, but when asked if she ever felt unsafe with Mother, she responded, "[l]ike a little, little, little, minimum with" Mother because Mother and Father "fight a lot." El.J. said her parents did not fight "with their hands" but "with their words" and "they

5

yell," "[a]nd sometimes when they do that, [she] hide[s] in a blanket with one of [her] stuffies."

Mother testified she wants the court to return the children to her and Father. She said she was currently residing with Father in their vehicle and sometimes in a hotel. She said she and Father have had one physical altercation, which occurred around January 2019 when Father stopped the car they were driving in, forcefully pulled her out it, and slapped her face. El.J. was in the car at the time. (This was before the other two children were born.) Mother also said Father has yelled at her, most recently in February 2025 when the children were present and he complained about the apartment being messy. At that point, she and Father had been arguing about three times a week in the children's presence, and she left to stay at a shelter. She confirmed Father has recorded arguments with her and, in February 2025, he live streamed an altercation with her on social media. Mother said she has not seen Father yell at the children. She believes Father worries but she has never had concerns about Father's mental health.

Mother has seen Father use marijuana almost every day, and when the children were living with them, Father would go outside to smoke marijuana. She feels Father takes appropriate care of the children when he smokes marijuana. Mother sought a temporary restraining order in February 2025 with help from a legal advocate for the shelter, in order to get custody of the children. She denied telling Father the address of the shelter where she was staying.

Father testified he wanted the children returned to his care. He acknowledged he and Mother have had verbal arguments in front of the children in 2025, but said he has not had a physical altercation with Mother

6

and has not pushed or shoved her.[5] With respect to Mother's testimony that he slapped her in 2019, Father said he did not "recall slapping her, but [he is] not discrediting what she said, either."

Father testified he was served by law enforcement with the temporary restraining order on February 21, placed on a section 5150 hold, and was at the hospital for four to five days. He took medication while hospitalized but is not currently taking any. He did not know if he received a diagnosis while hospitalized. Father said he does not drink alcohol but currently smokes marijuana three or four times a day, consuming "less than a half a gram a day." Earlier in 2025, when the children were in his care, he was smoking marijuana, but it varied how many times a day. When asked if he ever smoked in front of the children, he said he would smoke on the balcony of the apartment and, although there was a sliding glass door that allowed the children to see him, he did not face them. Father said he did not use or consume any other controlled substance.

The social worker testified Mother and Father are currently participating in individual counseling and parent education. She further testified that Mother's visits with the children have gone well, the children love Mother, and the children have demonstrated a close and loving bond with both Father and Mother. To the social worker's knowledge, however, Mother was not attending a personal empowerment program and Father was

---

[5] At a May 2025 hearing, Father's counsel asked the court to appoint a guardian ad litem for Father, and Father consented to the appointment. The court did so, but in June 2025, the guardian ad litem advised the court he did not believe Father needed a guardian ad litem at that time and asked to be relieved. The court granted that request.

not attending any type of anger management or batterer's treatment program.[6]

## III.

### THE JUVENILE COURT'S RULINGS

The juvenile court found by a preponderance of the evidence the children were within the provisions of section 300, subdivision (b)(1). It sustained certain of the allegations in support of jurisdiction related to domestic violence, Father's unresolved substance abuse problem, and Father's unresolved mental health issues.[7] The court declared the children dependents of the court under section 360, subdivision (d).

The juvenile court found "there is a long history of domestic violence between the mother and father, dating back to at least 2019 and continuing to at least as recently as a few months ago, in February of this year." The court found "there is evidence that physical violence between the parents has occurred and that this violence has placed the children at a substantial risk of serious physical harm," and "the violence is ongoing, as it recently occurred in February." The court stated that, to the extent Mother's testimony could be considered a recantation, it did not find her testimony credible. The court further found the violence is likely to recur and "both parents lack insight into the dangers and physical risk of harm that domestic violence exposes children to." The court noted Mother had not participated in personal empowerment program classes and Father had not participated in anger management classes, although those services had been offered.

---

[6] After SSA had rested, Father moved to dismiss the petition under section 350, subdivision (c). The juvenile court denied the motion.

[7] The juvenile court also struck some of the allegations.

8

The juvenile court acknowledged that substance use or unresolved mental health problems are not, on their own, sufficient to sustain a petition. The court noted, however, there was also domestic violence in this case. It stated the evidence showed Father currently uses marijuana multiple times a day and has used marijuana in the general vicinity of the children. The court found "the marijuana use does pose a substantial risk of harm to the children, due to the fact that [the court believes] there is evidence that the marijuana use can exacerbate the mental health problems and that the mental health problems relate to the domestic violence." The court further explained, "[t]he evidence suggests a relationship between the mental health issues and the domestic violence" and it could not "parse out and separate those two things based on the fact that the evidence in all of the reports and the evidence before the [c]ourt suggests and shows the [c]ourt a nexus between the two."

Regarding disposition, the juvenile court stated it had "found the domestic violence allegations to be true and that there is a substantial risk of harm to the physical safety of the children as a result," and "[d]ue to the fact that nothing has been done to alleviate these specific concerns, . . . the [c]ourt is not going to return the children to the parents at this time and finds by clear and convincing evidence that the children would be at a substantial risk of harm if returned home." The court also found "there is no reasonable means by which the children can be protected without removal." Thus, the court found section 361, subdivision (c)(1) applies by clear and convincing evidence. It also found "reasonable efforts were made to prevent or eliminate [the] need for removal of the children" from the home.

Father appealed.

9

DISCUSSION

I.

JURISDICTION FINDINGS

Under section 300, subdivision (b)(1), a juvenile court has jurisdiction over a child if "[t]he child has suffered, or there is a substantial risk that the child will suffer, serious physical harm or illness, as a result of any of the following: [¶] (A) The failure or inability of the child's parent or guardian to adequately supervise or protect the child. [¶] (B) The willful or negligent failure of the child's parent or guardian to adequately supervise or protect the child from the conduct of the custodian with whom the child has been left. [¶] (C) The willful or negligent failure of the parent or guardian to provide the child with adequate food, clothing, shelter, or medical treatment. [¶] (D) The inability of the parent or guardian to provide regular care for the child due to the parent's or guardian's mental illness, developmental disability, or substance abuse." (*Ibid.*)

"'The court need not wait until a child is seriously abused or injured to assume jurisdiction and take the steps necessary to protect the child.' [Citations.] It is well settled that physical violence between a child's parents may support the exercise of jurisdiction under subdivision (b)(1) of section 300 where there is evidence that the domestic violence has placed the child *at risk* of physical harm and the violence is ongoing or likely to recur." (*In re L.B.* (2023) 88 Cal.App.5th 402, 410–411 (*L.B.*); see also *In re R.C.* (2012) 210 Cal.App.4th 930, 941 ["Exposure to domestic violence may serve as the basis of a jurisdictional finding under section 300, subdivision (b)"].) "'"[D]omestic violence in the same household where children are living . . . is a failure to protect [the children] from the substantial risk of encountering the

violence and suffering serious physical harm or illness from it.""" (*In re R.C.*, at p. 941.)

"The relevant inquiry under section 300, subdivision (b)(1), is whether circumstances at the time of the jurisdictional hearing "'subject the minor to the defined risk of harm.'" [Citation.] 'The court may consider past events in deciding whether a child currently needs the court's protection.' [Citations.] Indeed, in a domestic violence situation, past violence is highly probative of the risk that violence may recur. [Citations.] To establish a defined risk of harm at the time of the hearing, there "'must be some reason beyond mere speculation to believe the alleged conduct will recur.""" (*L.B., supra*, 88 Cal.App.5th at p. 411.)

"A jurisdictional finding that the minor is a person described in section 300 must be made by at least a preponderance of the evidence." (*L.B., supra*, 88 Cal.App.5th at p. 411.) "'In reviewing a challenge to the sufficiency of the evidence supporting the jurisdictional findings and disposition, we determine if substantial evidence, contradicted or uncontradicted, supports them. "In making this determination, we draw all reasonable inferences from the evidence to support the findings and orders of the dependency court; we review the record in the light most favorable to the court's determinations; and we note that issues of fact and credibility are the province of the trial court." [Citation.] "We do not reweigh the evidence or exercise independent judgment, but merely determine if there are sufficient facts to support the findings of the trial court. [Citations.] "'[T]he [appellate] court must review the whole record in the light most favorable to the judgment below to determine whether it discloses substantial evidence . . . such that a reasonable trier of fact could find [that the order is appropriate].""" (*In re I.J.* (2013) 56 Cal.4th 766, 773.)

11

On appeal, Father argues the evidence is insufficient to support the juvenile court's orders because, at most, it shows only arguments between the parents and two physical incidents. Father acknowledges the incidents "cannot be taken lightly," but contends "those incidents did not place the children at substantial risk of serious physical harm." We conclude substantial evidence supports the juvenile court's finding of jurisdiction under section 300, subdivision (b)(1).

Notably, in addition to evidence of extensive verbal arguments and yelling between Father and Mother, there was evidence of two instances of physical abuse, one in which Father forcibly pulled Mother from a car and slapped her, and another in which Father pushed Mother out of the door of their apartment while live streaming the incident. (See *In re R.C., supra*, 210 Cal.App.4th at p. 943 [concluding two domestic violence incidents were substantial evidence supporting a section 300, subdivision (b) finding].) Evidence showed El.J. was present for the incident in the car and all of the children were present for the incident in the apartment. Although Mother's testimony indicated the incident in the car occurred in 2019, the incident in the apartment is recent: it occurred in February 2025, only a few months prior to the hearing. Furthermore, Father's lack of insight into his behavior contributes to and heightens the risk to the children, particularly given Father's denials of domestic violence, including his statement prior to the hearing that there was absolutely no domestic violence and his denial at the hearing of any physical altercation in 2025. (See *In re L.O.* (2021) 67 Cal.App.5th 227, 240 ["Father's failure even to acknowledge his past violent behavior, let alone express remorse or show any insight regarding it, exposes L. to a risk that he will once again attack Mother in L.'s presence"].)

12

Additionally, Father asserts the evidence was insufficient to sustain the allegations regarding his mental health and substance abuse. Father contends "the record lacks evidence of a specific, defined risk of harm to the children from [his] mental health status." Although he concedes "being placed on a psychiatric hospital hold in February 2025 . . . was a concern," he argues his "children had not been harmed by [his] mental health, and the children were not at substantial risk of serious physical harm." As for substance abuse, Father underscores that he "voluntarily admitted that he smoked marijuana daily," and El.J. said it did not cause him to act differently and Mother said he appeared more relaxed and appropriately took care of the children after smoking. He asserts a parent's use of drugs is not alone sufficient for jurisdiction and "there was no nexus between [his] conduct and a substantial risk of serious physical harm to his children." We reject his arguments for several reasons.

As an initial matter, we have already concluded substantial evidence supports the juvenile court's findings of domestic violence. That alone is sufficient here to support the court's jurisdiction under section 300, subdivision (b)(1) without regard to any issues regarding Father's mental health or substance abuse. Thus, any additional findings or comments by the juvenile court about Father's mental health or substance abuse are, in effect, surplusage.

Nevertheless, we also find substantial evidence supports the court's findings regarding Father's unresolved mental health issues and substance abuse. The evidence before the court showed Father had recently undergone an involuntary psychiatric hospitalization in February 2025, which was precipitated by a troubling and incoherent interaction with a law enforcement officer. Evidence further supported that during that

13

hospitalization—which predated the juvenile court's jurisdiction and disposition hearing by only a few months—Father was diagnosed with schizophrenia and received medication for his condition. As of the hearing, however, Father was no longer taking any medication, which means his schizophrenia is going untreated. Moreover, Father's bizarre statement to SSA in the course of this proceeding that Mother was being "human trafficked by OC Care and the OC government" and his insistence that he has only been diagnosed with ADHD also support the existence of unresolved mental health issues. Even Mother, prior to the hearing, described Father as mentally unstable and acknowledged he says things that "are not real." As for substance abuse: By Father's own admission, he smokes marijuana multiple times a day and has participated in dozens of rehabilitation programs. In short, even if it were necessary to support the juvenile court's challenged orders here, we conclude substantial evidence supports the court's determination that Father has both unresolved mental health and substance abuse issues and that there is a sufficient nexus between those issues and the domestic violence.[8]

---

[8] Father cites to cases for the proposition that a juvenile court cannot presume physical harm would result to the children from the mere fact of a parent's mental health or substance abuse issues. (See *In re Rebecca C.* (2014) 228 Cal.App.4th 720, 728 [rejecting argument that "would essentially mean that physical harm to a child is *presumed* from a parent's substance abuse under the dependency statutes, and that it is a parent's burden to prove a negative, i.e., the *absence* of harm"].) The juvenile court here, however, did not simply presume that physical harm would result to the children from Father's mental health and substance abuse issues, particularly given its finding of a nexus between the domestic violence and the mental health and substance abuse issues.

## II.

## DISPOSITION ORDER

"To remove a child from parental custody, the court must make one of five specified findings by clear and convincing evidence." (*In re V.L.* (2020) 54 Cal.App.5th 147, 154.) Section 361, subdivision (c)(1) permits removal when the court finds by clear and convincing evidence that "[t]here is or would be a substantial danger to the physical health, safety, protection, or physical or emotional well-being of the minor if the minor were returned home, and there are no reasonable means by which the minor's physical health can be protected without removing the minor from the minor's parent's . . . physical custody." (*Ibid.*) "In determining whether to remove a child, the court 'may consider the parent's past conduct and current circumstances, and the parent's response to the conditions that gave rise to juvenile court intervention.' [Citation.] The court 'must also consider whether there are any reasonable protective measures and services that can be implemented to prevent the child's removal from the parent's physical custody.' [Citation.] 'The parent need not be dangerous and the minor need not have been harmed before removal is appropriate. The focus of the statute is on averting harm to the child.'" (*In re Miguel J.* (2025) 114 Cal.App.5th 635, 649.)

"We also review challenges to the sufficiency of the evidence supporting dispositional orders for substantial evidence. [Citation.] 'When reviewing a finding that a fact has been proved by clear and convincing evidence, the question before the appellate court is whether the record as a whole contains substantial evidence from which a reasonable fact finder could have found it highly probable that the fact was true.' [Citation.] 'The appellant has the burden of showing there is no evidence of a sufficiently

15

substantial nature to support the findings or orders.'" (*In re Miguel J., supra,* 114 Cal.App.5th at pp. 649–650.)

On appeal, Father asserts the children would not be in substantial danger if returned to his custody because they had not previously been harmed and he was working on his parenting skills and relationship with Mother. He concedes he "had not participated in a domestic violence program, which was recommended but not court ordered yet," but he says "he had completed the recommended parenting course and started individual counseling." Father also points to his testimony that he was willing to do what was required to regain custody of the children.

We conclude the juvenile court's finding that the children should be removed under section 361, subdivision (c)(1) was supported by substantial evidence. The same evidence regarding domestic violence discussed above also provides substantial evidence supporting the court's finding that there is a substantial danger to the children if they were returned home. As discussed, evidence supported that Father and Mother had engaged in extensive verbal arguments and two physical altercations, with the most recent one occurring quite recently, in February 2025. Moreover, evidence showed Father had not demonstrated insight into his behavior. Although Father has taken some classes, he denied the February 2025 incident, stated he did not recall the 2019 incident, and has denied that any domestic violence had occurred.

Father asserts *In re Basilio T.* (1992) 4 Cal.App.4th 155, superseded by statute on another point as noted in *In re Lucero L.* (2000) 22 Cal.4th 1227, 1239–1242, "is instructive of the evidence needed to remove a child from a parent's custody based on allegations of domestic violence." In that case, the appellate court concluded the evidence was insufficient to

16

support the removal of two children. (*In re Basilio T.*, at pp. 169–171.) Father points to the statement by that appellate court that, although two incidents of domestic violence "presumably occurred in or near the minors' presence, it is significant that neither incident directly affected either minor physically, i.e., the adults were fighting with each other and not directing their anger at the minors or abusing them. In fact, no evidence whatsoever was presented that the minors were harmed physically during the incidents that led to this proceeding." (*Id.* at p. 171.) Although *Basilio T.* concluded the evidence was insufficient under the particular circumstances before it, we do not find it persuasive here. To the extent Father is suggesting the children must suffer physical harm before they can be removed, the law is otherwise: "Actual harm to a child is not necessary before a child can be removed." (*In re V.L., supra*, 54 Cal.App.5th at p. 154.) Where (as here) evidence shows a parent has demonstrated a history of domestic violence and a lack of insight into his behavior, neither SSA nor the courts are required to stand by and wait for him to direct that violence to the children before acting to protect them.

Father also argues there are other, reasonable means by which the children could be protected without removing them from his custody. For example, Father suggests the juvenile court could have entered an order requiring "unannounced home inspections by social workers and the attorney for the children; an order that custody was conditioned on [F]ather's compliance with his case plan; an order that [F]ather and [M]other not be together—if necessary; and that custody be contingent on [F]ather having suitable housing for the children, which could include a hotel."

SSA argues Father forfeited this argument by not suggesting to the juvenile court that it consider these alternative, purportedly reasonable means. We need not address the forfeiture issue. Even assuming Father

17

properly preserved the argument for appellate review, the juvenile court found there were no reasonable means to protect the children other than to remove them, and we conclude substantial evidence supports that determination. (See *In re G.C.* (2020) 48 Cal.App.5th 257, 266 [noting "court could have done the things suggested by" the father but "under the substantial evidence standard of review, there is ample evidence to support the court's order removing the children"].)

Substantial evidence supports a conclusion that the domestic violence risk was ongoing and sporadic unannounced visits by a social worker would not eliminate that risk. This is especially true given that Father continues to deny the existence of any domestic violence and, despite previously acknowledging he was diagnosed with schizophrenia during his hospitalization, continues to insist he only has ADHD. Periodic visits from a social worker are not likely to solve a domestic violence problem when the perpetrator of the violence refuses to acknowledge a problem exists. Additionally, Father now suggests the court could have ordered Father and Mother to live separately, but he did not offer this as a viable solution at the hearing, and the record is sufficient to support a conclusion that it is not a reasonable alternative: Mother and Father have separated before (with Mother seeking refuge in a domestic violence shelter), but Mother ultimately returned to live with Father, suggesting in a text message she did not feel she had the financial wherewithal to do otherwise. Father's suggestion the court should have left the children with him and simply required that he provide "suitable housing" for them misses the point. The children were removed because of a substantial risk to their physical safety, not because of a lack of suitable housing; the threat of future violence from Father is not addressed or eliminated by the nature of the family's housing arrangements. Finally,

18

Father's suggestion the court should have granted him custody conditioned upon compliance with a case plan is unavailing, particularly given the lack of insight Father had demonstrated into the domestic violence issues.

In sum, on the record before us, we have no difficulty concluding sufficient evidence supports the juvenile court's orders.

## DISPOSITION

The juvenile court's jurisdiction and disposition orders are affirmed.

GOODING, J.

WE CONCUR:

SANCHEZ, ACTING P. J.

DELANEY, J.

19